ANDERSON CONSTRUCTION CORPORATION *v.* SAVIN BROTHERS, INC.

ALCORN, C. J., HOUSE, THIM, RYAN and SHAPIRO, Js.

Argued February 3—decided February 23, 1971

*John P. Kane,* with whom, on the brief, was *Martin S. Michelson,* for the appellant (defendant).

*Thomas L. Brayton,* for the appellee (plaintiff).

ALCORN, C. J. The plaintiff was a subcontractor in a highway construction project for the state highway department. The plaintiff, in turn, entered into a further subcontract with the defendant in which the defendant agreed to furnish riprap which the job called for. At the conclusion of the work, the plaintiff paid the defendant, at the contract price, for an estimated 31,500 tons of riprap supposedly furnished by the defendant. The state, however, paid the plaintiff for 26,640 tons of riprap which it determined had been furnished by the defendant. The plaintiff brought this action to recover the claimed overpayment from the defendant. The court found the tonnage to be as determined by the state and rendered judgment for the plaintiff. The defendant has appealed from the judgment.

The contested issue between the parties is over the method adopted by the state highway department for measuring the amount of riprap furnished by the defendant. In seeking a reversal of the judgment, the defendant relies principally on corrections which it asserts should be made in the trial court's finding.

The finding, with such minor correction as is required, discloses the following circumstances. The riprap which the general contractor was required to furnish was identified as item 317 in the contract with the state highway department, and it was this item which the plaintiff and, in turn, the defendant undertook to furnish and place. The state highway department specifications described the riprap as

"heavy stones used to protect foundations of piers, abutments, and walls from scour and the slopes of embankments from washing and slipping" which were to be placed as shown on the plans or as directed by the engineer. The stones were required to be sound, tough, durable and angular rocks of a minimum dimension of six inches, weighing between twenty and 1000 pounds each. At least 75 percent of the stones must weigh more than 150 pounds each. The state highway department specified three methods of measuring the tonnage of the riprap for payment as follows: (1) before placing, by the ton of 2000 pounds; (2) if not weighed, it was to be measured in trucks or in trimmed piles and computed at the rate of 2700 pounds per cubic yard; and (3) by computing the water displacement differential between a loaded and an unloaded barge or vessel. The third method of measurement had no application to the present case. A "trimmed pile" as the term is used in the second method of measurement is a pile which has been placed and trimmed and then measured by cross sections. Under the highway department specifications, the riprap was to be paid for at the contract unit price per ton in place, including labor, equipment, tools and material.

The specifications of the highway department were a part of the subcontract between the plaintiff and the defendant. Accordingly, the defendant agreed with the plaintiff, in writing, to complete the 317 riprap item "in accordance with the plans and specifications for a unit price of one dollar and fifty cents ($1.50) per ton as measured by the State Highway Department."

At the start of the operation, the riprap was measured in trucks, but, at some time during the performance of the contract, the engineer for the

state highway department directed that the riprap be measured after it was in place. This method of measurement deviated from the specifications.

The finding is silent as to the method actually used to measure the riprap after it was in place. The finding recites highway department specifications that work acceptably completed would be measured and the work performed would be computed "according to United States standard measures" and that "linear measurements for determining the areas of base courses" would be made "along the actual surface of the roadway". There is a finding that "cross sections" were taken on the job. But there is no finding as to what was actually done to determine the cubic volume of the riprap which had been furnished after it was in place.

The finding is, however, that the parties agreed during the trial that the actual volume of riprap in place totaled 19,733 cubic yards. To this the court applied the conversion factor of 2700 pounds per cubic yard as specified in the highway department measurement method for truckload or trimmed pile measure. The defendant protests the application of this conversion factor. It argues that a conversion factor of 2700 pounds per cubic yard can be properly applied only in utilizing the state highway department's second method of measurement, namely, in trucks or trimmed piles, and that it cannot properly apply to "in place" measurement such as was used here.

The trial court's finding that the parties agreed, during the trial, that the volume of riprap in place totaled 19,733 cubic yards is not attacked. Since the parties have agreed upon the cubic yardage of the riprap which was actually furnished by the defendant, the judgment cannot be disturbed. Obvi-

ously, riprap spread in place on the ground is not the same, for cubic measurement purposes, as riprap loaded on a truck or piled in "trimmed piles". A cubic yard of riprap, however, is still a cubic yard of riprap whether it is loaded in a truck, placed in a pile, or spread on the ground. The basis of measurement contemplated by the contract was the use of a 2700-pound conversion factor for each cubic yard of material by volume. The cubic yardage having been agreed upon, it was proper for the court to apply that conversion factor in order to determine the tonnage.

There is no error.

In this opinion the other judges concurred.